UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENYATTA I. PATTON, and HARTFORD
CASUALTY INSURANCE COMPANY                                      PLAINTIFFS

VS.                                           CIVIL ACTION NO. 3:13cv474-DPJ-FKB

NISSAN NORTH AMERICA, INC.                                       DEFENDANT

ORDER

This personal-injury action is before the Court on Nissan North America, Inc.'s

("Nissan") Motion for Summary Judgment [37], pursuant to Federal Rule of Civil Procedure 56.

After considering the parties' submissions and hearing oral argument, the Court concludes that

Plaintiff Kenyatta I. Patton has failed to establish that Nissan owed him a duty of care or that

Nissan's alleged conduct proximately caused his injuries.  Nissan's Motion for Summary

Judgment [37] is therefore granted, and this action is due to be dismissed.[1]

I.       Facts and Procedural History

Plaintiff Kenyatta I. Patton is a former commercial truck driver for Specialized

Transportation Services ("STS").  On November 13, 2011, Patton picked up a trailer at Nissan's

Canton, Mississippi plant that Nissan had already loaded.  Though Patton was concerned that

Nissan had not properly loaded and secured the cargo, he drove off without taking any corrective

action.  Two turns later, Patton heard a "pop," looked in his mirrors, and saw the trailer tip over

and pull the tractor and Patton into a ditch.  Patton was allegedly injured in the accident.  Patton

claims that the unsecured cargo caused the accident and sues Nissan for negligence and

---

[1]Subsequent to the motion, Hartford Casualty Insurance Company intervened [56] in this
action.  Its claims for reimbursement of workers' compensation benefits are derivative of
Patton's claims and thus are dismissed for the same reasons.

negligence per se.  Compl. [1-1].  Following discovery, Nissan moved [37] for summary

judgment.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.       Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324.  In reviewing the evidence, factual

controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have

submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.    Analysis

    A.    Negligence

Patton contends that Nissan was negligent in the way it loaded and secured the cargo.  To

establish negligence, he must show duty, breach of duty, causation, and damages.  *Duckworth v.*

*Warren*, 10 So. 3d 433, 440 (Miss. 2009).  Nissan challenges Patton's proof on the duty and

causation elements.

    1.    Breach of Duty

Whether Nissan owed Patton a duty is a question of law decided by the Court.  *See Rein*

*v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (en banc).  And in a majority of

jurisdictions, the duties a shipper owes a carrier are established by the policy enunciated in

*United States v. Savage Truck Line, Inc.*, where the Fourth Circuit held that

> [t]he primary duty as to safe loading of property is . . . upon the carrier.  When the
> shipper assumes the responsibility of loading, the general rule is that he becomes
> liable for the defects which are latent and concealed and cannot be discerned by
> ordinary observation by the agents of the carrier; but if the improper loading is
> apparent, the carrier will be liable notwithstanding the negligence of the shipper.

209 F.2d 442, 445 (4th Cir. 1953); *see also Whiteside v. United States*, No. 1:11-CV-154, 2013

WL 2355522, at *6 (E.D. Tex. May 28, 2013) ("[T]he rationale embodied in the *Savage* rule is

followed by a majority of jurisdictions." (collecting cases)).  The parties dispute whether

Mississippi would likewise adopt this rule.  But as explained below, the specific facts of this case

allow a decision based on existing Mississippi law that is in ways similar to *Savage*.  There is no

need to make an *Erie* guess whether Mississippi would fully adopt the *Savage* rule.[2]

According to Patton, Nissan owed him a duty of reasonable care to "load and secure" the

cargo.  But Nissan gives the issue a finer point, arguing that it cannot be liable for merely placing

the cargo on the trailer because Patton, as the carrier, had the sole duty to make sure it was

properly distributed and secured.  Nissan's distinction between the duties existing before and

after cargo is loaded is well rooted.

The Federal Motor Carrier Safety Regulations explain in 49 C.F.R. § 392.9 that after

cargo is loaded, a commercial driver has a duty to inspect, properly distribute, and secure it:

> (a) General.  A driver may not operate a commercial motor vehicle and a motor
> carrier may not require or permit a driver to operate a commercial motor vehicle
> unless—
>
> > (1) The commercial motor vehicle's cargo is *properly distributed and
> > adequately secured* . . . .
>
> (b) Drivers of trucks and truck tractors.  Except as provided in paragraph (b)(4) of
> this section, the driver of a truck or truck tractor must—
>
> > (1) Assure himself/herself that the provisions of paragraph (a) of this
> > section have been complied with before he/she drives that commercial
> > motor vehicle;
> > . . .
> >
> > (4) The rules in this paragraph (b) do not apply to the driver of a
> > sealed commercial motor vehicle who has been ordered not to open
> > it to inspect its cargo or to the driver of a commercial motor

---

[2]Patton also argues that *Savage* conflicts with Mississippi's comparative-negligence statute.  While Mississippi is a comparative-negligence state, *see* Miss. Code Ann. § 11-7-15, it is axiomatic that fault cannot be compared unless both parties are at fault.  And to prove fault, Patton must start by legally establishing Nissan's duty.  So the question remains whether Nissan had a legal duty.

> vehicle that has been loaded in a manner that makes inspection of
> its cargo impracticable.

(Emphasis added).

This same assignment of post-loading duties appears in the Federal Motor Carrier Safety Administration's ("FMCSA") Guidance, published with its regulations.  There, the FMCSA states more directly that the post-loading duties rest with the carrier—not the shipper:

> Question 2:  Does the Federal Highway Administration (FHWA) have authority to enforce the safe loading requirements against a shipper that is not the motor carrier?

> Guidance:  No, unless HM [hazardous materials] as defined in §172.101 are involved.  It is the responsibility of the motor carrier and the driver to ensure that any cargo aboard a vehicle is properly loaded and secured.

*Part 392:  Driving of Commercial Vehicles*, Fed. Motor Carrier Safety Admin. (last visited Feb. 25, 2015), www.fmcsa.dot.gov/regulations/title49/section/392.9?guidance.

Closer to home, the Mississippi Professional Driver's Manual, published by the Mississippi Department of Public Safety, likewise notes the carrier's duty to secure cargo.  The manual states, "Whether or not you load and secure the cargo yourself, you are responsible for: Inspecting your cargo, . . . [and] [k]nowing your cargo is properly secured . . . ."  Mot. [37] Ex. 5 at 58.  The manual then states that "[a]s part of your pre-trip inspection, make sure the truck is not overloaded and the cargo is balanced and secured properly." *Id.*  Finally, the manual also provides drivers instructions on proper cargo securement. *Id.* at 59.

The motor carrier industry is heavily regulated, yet all of these state and federal sources indicate that once cargo is loaded, a commercial driver has a duty to inspect, properly distribute, and secure it.  None mention concurrent obligations held by the shipper, and one—the FMCSA's

guidance—provides that these duties are not shared.  In short, there is no statutory basis for

Nissan's alleged duty.  *See Thomas v. McDonald*, 667 So. 2d 594, 596–97 (Miss. 1995) (holding

that "where there is a statute, the statute will be the controlling law for the parties' action or

failure to act"); *see also Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450, 477 (Miss.

2010) (stating that even though FMCSA regulations are not statutes, same logic applies).

Likewise, Patton cites no common-law duty in Mississippi for a shipper to inspect, distribute,

and secure cargo that it pays a carrier to ship.  Accordingly, the Court finds no general duty for a

shipper in these regards.

That said, duties can arise in other ways.  For example, a party that "undertakes the

performance of an act" must act with reasonable care.  *Dr. Pepper Bottling Co. of Miss. v.

Bruner*, 148 So. 2d 199, 201 (Miss. 1962).  Had Nissan secured the cargo in a negligent way,

then that act might have raised a trickier issue.  But there is no record evidence that Nissan

attempted to secure the cargo after placing it in the trailer.  Patton testified that this was the first

time he had "ever haul[ed] something of that nature," and he assumed everything "was secure

like it was supposed to be."  Patton Dep. [45-1] at 8.[3]  When asked whether he "notice[d]

anything else about whether it was secured in any way, such as blocks or tie-downs," Patton

responded, "No, sir, I didn't notice anything of that nature."  *Id.*  Thus, there is no evidence

Nissan undertook to perform the act of securing the cargo.  *Cf. Dr. Pepper Bottling Co.*, 148 So.

2d at 201.

---

[3]This and other passages indicate that Patton was unaware of his duties under state and
federal regulations.

A party can also negligently fail to act (*e.g.*, by failing to secure the cargo).  And when, as here, a party does not have a duty to act, such "[a] duty can be assumed either by contract or by a gratuitous promise that induces detrimental reliance."  *Doe v. Hunter Oaks Apartments, L.P.*, 105 So. 3d 422, 427 (Miss. Ct. App. 2013).  Here, Patton points to three documents as evidencing a contractual duty for Nissan to secure the load:  (1) an addendum to the contract; (2) STS's driver's manual; and (3) the bill of lading.

First, Patton refers to section 8.1(a) of the STS/Nissan contract, which deals with "Trailer Damage" and states:

> (a) Carrier shall not be liable as provided under this agreement, except for loss or damage to cargo occurring while shipment is under care, custody and control of Carrier.  Carrier and its employees will not participate or be held responsible for the loading or unloading of cargo tendered by Shipper. . . .  Further, Carrier shall not be responsible for loss or damage that is determined to be caused by improper packing, loading, bracing or other act by an employee, agent or subcontractor of Shipper.  Carrier will be responsible for damage to cargo caused by the negligence or willful misconduct of the Carrier's employees.

Resp. [45] Ex. 2 at 13.  This addendum to the contract does not specify the parties' duties.  It merely provides that if Nissan's employees damage STS's trailer while loading the cargo, then STS is not responsible for that loss.  It does not generally state that Nissan has undertaken a duty to distribute and secure the cargo, and again, there is no record evidence that it did so in this case.

Second, Patton turns to the STS Driver's Manual, which states that "STS does not want employees to *load or unload* freight, therefore, we do not market 'Driver touch' freight to our customers.  If you are asked to load or unload, or assist, you must call your FM immediately."  Resp. [45] Ex. 4 at 2 (emphasis added).  But this manual does not establish that Nissan contractually or gratuitously assumed any duties after placing the cargo on the trailer.  The

contract itself includes the standard "entire-agreement clause," *id.* Ex. 2 at 8, and does not

reference this manual.  And even if the manual could create a contractual duty for Nissan, the

passage Patton quotes speaks to "load[ing]" rather than distributing and securing cargo.

Elsewhere, the same manual advises that "[d]rivers must be able to safely perform the following:

. . . securing loads in trailer."  Mot. [37] Ex. 6 at 19.  So again, the manual does not create a duty

for Nissan to distribute or secure the cargo it loads onto the trailer.

Third, Patton points to the following language found in the bill of lading:  "This is to

certify that the above named articles are properly classified, described, packaged, marked and

labeled and are in proper condition for transportation according to the applicable regulations of

the Department of Transportation."  Resp. [45] Ex. 6 at 1.  This language does not address

loading or securing cargo.  It instead addresses transportation of hazardous materials and is a

direct quote from 49 C.F.R. § 172.204(a)(1) dealing with such cargo.  So even if the language did

address loading and securing, it has no application here because the subject bill of lading is

clearly marked "NON-HAZARDOUS," and the signature block next to the language Patton

quotes is left blank.  *See id.*

While Patton's record evidence fails to show Nissan contractually undertook a relevant

duty, the contract itself states that "each and every shipment tendered to Carrier by Shipper" shall

be subject to "the provisions of law applicable to motor contract carriage hereunder."  *Id.* at 2;

*see also id.* at 3 ("Carrier shall ensure that all drivers comply with all applicable state and federal

laws and regulations . . . .").  Thus, through these contract provisions, the parties have

incorporated the requirements of 49 C.F.R. § 392.9(a) and (b), which place the duty on the driver

to ensure that the cargo is properly distributed and secured.  Finally, there is no dispute that the

8

contracting parties, STS and Nissan, understood these respective duties. As STS's corporate representative testified, "while [its] drivers don't load the trailers, . . . [t]hey are responsible to use load locks or to make sure that the load . . . is secure." STS Dep. [37-1] at 4.[4] Patton has not established that Nissan contractually agreed to do anything other than place the load on the trailer.

Nor has Patton established a gratuitous promise that induces detrimental reliance. *See Doe*, 105 So. 3d at 427. "[F]or a party to be held liable for negligent performance of a gratuitous or voluntary act, the plaintiff must show detrimental reliance on the performance." *Wagner v. Mattiace Co.*, 938 So. 2d 879, 885 (Miss. Ct. App. 2006) (citing *Rein*, 865 So. 2d at 1147; *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So. 2d 359, 368–69 (Miss. 1992); *Higgins Lumber Co. v. Rosamond*, 63 So. 2d 408, 410 (Miss. 1953)).

In *Higgins*, the Court observed the following:

> If a person, by promising or undertaking to do definite acts of service for another, realizes or should realize that it is substantially certain that the other will refrain from doing such acts for himself or securing alternative services then available, the person so promising or undertaking becomes subject to liability for harm resulting from his undertaking and subsequent failure.

63 So. 2d at 410 (internal quotation marks omitted) (citing Reinstatement (First) of Agency § 378 cmt. a. (1933)); *see also Coleman v. Louisville Pants Corp.*, 691 F.2d 762, 766 (5th Cir. 1982) ("In Mississippi, then, detrimental reliance by the plaintiff is an essential element of any action based upon the negligent performance of a gratuitous act.").

---

[4]The federal regulations that STS and Nissan incorporated into their contract include the exception found in 49 C.F.R. § 392.9(b)(4) that relieves the driver of the duty to inspect and secure when he or she receives sealed cargo and is instructed not to inspect, or when the vehicle is "loaded in a manner that makes inspection of its cargo impracticable." Neither of these exceptions apply here, so the duty remained on STS and Patton.

This is essentially the theory on which Patton relies—that Nissan undertook the task of securing the cargo and thereby induced Patton to rely on its safety. Patton Dep. [45-1] at 8 (stating that he assumed Nissan secured the load). But Patton fails to establish that Nissan gratuitously undertook that duty. And even if he could prove that point, Patton could not have detrimentally relied upon it because he had a state and federal regulatory duty to ensure the cargo was properly distributed and secured, and that duty was memorialized in the applicable contract. *See* Resp. [45] Ex. 2 at 2, 3 (incorporating applicable regulations); *see also* 49 C.F.R. § 392.9(a), (b). Patton has not established that Nissan had or undertook any duties with respect to ensuring that the cargo was properly distributed or secured.

> 2.      Causation

Alternatively, even assuming Nissan had some duty with respect to the way it placed the cargo in the trailer, Patton has not shown proximate cause. "Proximate cause is a concept which is more accurately defined by reference to the distinct concepts of which it is comprised, which are:  (1) cause in fact; and (2) foreseeability." *Fenelon v. Jackson Metrocenter Mall Ltd.*, No. 2011-CA-00683-COA, 2012 WL 5915311, at * 4 (Miss. Ct. App. Nov. 27, 2012) (en banc) (internal quotation marks omitted).

Again, there is no evidence Nissan undertook anything other than placing the cargo in the trailer. And there is no credible record evidence that the cargo's placement (as opposed to securement) was the cause in fact of the accident. When asked to explain the accident, Patton testified that the cargo "tilt[ed] over and hit . . . the trailer . . . and that's what made the trailer turn over." Patton Dep. [45-1] at 9. Of course Patton could not see the cargo inside the trailer, and there is no expert or other competent evidence explaining what happened.

Nissan convincingly argues that Patton offers nothing but speculation to support his

contention that the cargo moved before the roll.  While this broader causation theory raises a

close call under Rule 56, even assuming the cargo did move first, the record contains no credible

evidence that the way Nissan placed the cargo in the trailer, as opposed to the alleged failure to

secure it, factually caused the accident.  At best, Patton testified that the cargo "didn't look right

to [him]," Patton Dep. [37-2] at 16, but as Patton himself argues elsewhere, he had never before

hauled that type of load.  Resp. [45] at 8 (citing Patton Dep. [45-1] at 7–8).  Patton has not

created a question of fact on this point.[5]

          B.     Negligence Per Se

Nissan asserts that summary judgment is appropriate as to Patton's negligence per se

claims because the cited statutes and regulations place no duty on the shipper to safely secure

cargo.  Patton conceded the point, and his negligence per se claims are dismissed with prejudice.

IV.    Conclusion

The Court has considered the parties' arguments.  Those not specifically addressed would

not have changed the outcome.  For the foregoing reasons, the Court finds that Nissan's Motion

for Summary Judgment [37] should be granted, and Patton's claims are dismissed with prejudice.

---

[5]Nissan also argues lack of proximate cause, claiming that Patton's failure to follow the regulations was not foreseeable and therefore constituted an intervening cause.  On some level, Nissan has a point.  It seems untenable as a general matter of proximate cause that a contracting party should foresee that its counterpart's employee would breach the contract, violate applicable regulations, and otherwise fail to perform the duties that the parties contracted for and understood.  That said, Nissan presents this as an issue of intervening cause.  Def.'s Mem. [38] at 14.  And "the term 'intervening cause' is generally meant to refer to the unforeseeable acts of **third parties**, not the plaintiff."  *Wal-Mart Stores, Inc. v. Johnson*, 807 So. 2d 382, 388 (Miss. 2001) (en banc) (citing Restatement (Second) of Torts § 448 (1977)).  Accordingly, the Court will not further explore the issue.

Nissan's remaining Motion in Limine [51] is denied as moot.  And because Hartford Casualty

Insurance Company's claims are derivative of Patton's, its Intervenor Complaint [56] is also

dismissed with prejudice.

A separate final judgment will be entered in this case in accordance with Federal Rule of

Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 27th day of February, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE